IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JORGE GONZALEZ, Individually and on Behalf of All Others Similarly Situated, § § § | | |
| *Plaintiff,* § § | | |
| vs. § | CIVIL ACTION NO. 4:09-CV-02946 | |
| § | | |
| BANK OF AMERICA, N.A., BANK OF AMERICA INSURANCE SERVICES, INC., BA INSURANCE SERVICES, INC., INTERSECTIONS, INC., INTERSECTIONS INSURANCE SERVICES, INC., LOEB HOLDING CORP., GLOBAL CONTACT SERVICES, L.L.C., AMERICAN INTERNATIONAL GROUP, INC., AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, § § § § § § § § § § § § § | JURY TRIAL DEMANDED | |
| *Defendants.* § | | |

**REPLY IN SUPPORT OF NATIONAL UNION AND AIG'S
MOTION TO DISMISS (Dkt. #28)**

Defendants American International Group, Inc. ("AIG") and National Union Fire Insurance Company of Pittsburgh, PA ("National Union") file this Reply in support of their Motion to Dismiss (Dkt. #28).[1]

**Preliminary Statement**

Buzzwords associated with RICO and fraud cannot substitute for facts; therefore Plaintiff has not stated a claim. In fact, Plaintiff's 30-page amended pleading and 40-odd page defense of it proves a simple truism: namely, that prolix pleading often masks an absence of detail. *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). At the end of this cycle, we're

---

[1] National Union and AIG adopt and incorporate the arguments made by the other Defendants rather than repeat them here.

left where we started—with no substantive factual allegation that either AIG or National Union has committed any act that harmed Plaintiff, whether through a RICO violation or otherwise. As such, this case must be dismissed.

A. **Plaintiff Alleges No Facts Implicating AIG or National Union in the Alleged Scheme.**

As AIG and National Union demonstrated in their Motion to Dismiss, Plaintiff's First Amended Complaint ("FAC") alleges no facts against either of them, other than that National Union provided Plaintiff with $100,000 of accidental death benefit insurance[2] for a nominal price through the "Smart Step" program. Attempting to escape dismissal, Plaintiff now alleges that AIG and National Union are liable because he alleged in paragraphs 68 and 69 of the FAC the "Description of Coverage" he received varies in some unspecified way from the "governing master policies." (Plaintiff's Composite Memorandum in Opposition to Defendants' Motions to Dismiss ("Response Memorandum"), pp. 1-2.) That allegation does not, however, appear in paragraphs 68 or 69 of the FAC.

But for sake of argument, let's look at that allegation. What we find is that it changes nothing because this is at bottom a fraud case, so Plaintiff has a pleading obligation to show – with particularity – what this alleged difference is, that he relied on it, and—more important—how it harmed him. He does not claim that the DOC is different from what he agreed to purchase. He does not allege that he received less than he bargained for. He does not state that he made a claim for the $100,000 death benefit that was unreasonably denied. Without making these claims on the face of the FAC, he has not alleged that National Union has done anything that caused him injury, and, consequently, he has not stated a claim.

---

[2] Plaintiff incorrectly characterizes the Smart Step Plan as "accidental death and disability" insurance. (*See, e.g.*, Response Memorandum, p. 2).

2

B.     **Plaintiff's Pleading Fails to State a Claim.**

Plaintiff's Response brushes aside the United States Supreme Court's recent holdings in *Twombly* and *Iqbal* with a *non sequitur*, even though the Fifth Circuit has held that the dictates of those cases apply to all civil litigation, including RICO cases. *See, e.g., Brunig v. Clark*, 560 F.3d 292, 297 n.14 (5th Cir. 2009). Ignoring the current state of the law, Plaintiff relies on the outdated holdings of several cases, including one prominent citation to *Conley v. Gibson*, which *Twombly* specifically abrogated. There can be no doubt, however, that *Twombly* and *Iqbal* mandate that a case like this one—in which a massive conspiracy is alleged—must meet a minimum level of factually supported plausibility or face dismissal. Plaintiff has not cleared that bar.

C.     **RICO Claims May Not Be Founded on Ordinary Business Relationships.**

Plaintiff makes no serious attempt to challenge or distinguish *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392 (7th Cir. 2009), which no doubt is because that case is indistinguishable in any meaningful way from our case. There, the Plaintiff posited an association-in-fact enterprise consisting of an insurer and a member-services organization through which the complained-of insurance was marketed. The Court found that this was no more than "the ordinary operation of a garden-variety marketing arrangement"—"not an association-in-fact enterprise directed and controlled by [the insurer]." *Id.* at 400. This holding squares with Fifth Circuit RICO jurisprudence, in which courts have repeatedly found that participation in "standard business arrangements" does not equate to "operation or management" of a RICO "enterprise." *See, e.g.*, *In re McCann*, No. 06-20488, 2008 WL 638139, at * 6 (5th Cir. Mar. 7, 2008) (members of alleged association in fact were "merely partners in a scheme"); *Do v. Pilgrim's Pride Corp.*, 512 F. Supp. 2d 764, 769 (E.D. Tex. 2007) ("standard business arrangements" between agribusiness and bank did not constitute "continuous RICO enterprise"); *Gray v. Upchurch*, No. 5:05-cv-210-

3

KS-MTP, 2007 WL 2258906, at *4 (S.D. Miss. Aug. 30, 2007) (allegation that mortgage lenders "knew or should have known" that loans they made were part of fraudulent scheme insufficient to establish existence of or control over enterprise). Here, as in *Crichton*, Plaintiff pleads no more than "a garden variety marketing arrangement."

**D.      Plaintiff Has Not Established the Existence of a RICO Enterprise.**

Although AIG and National Union prominently cited the United States Supreme Court's holding in *Boyle v. U.S.*, 129 S. Ct. 2237 (2009) in their Motion (*see* pp. 6, 9-10, 11), Plaintiff suggests that they have "failed to notice" the case. (Response Memorandum, p. 12.) In fact, AIG and National Union showed why Plaintiff has not and cannot meet even the relaxed standards of *Boyle*. Here's why. First, in *Boyle* the Supreme Court confirmed the continuing viability of *U.S. v. Turkette*, in which the Court held that an association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Boyle*, 129 S.Ct. at 2243 (quoting *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)). Second, the Court specifically noted that the heightened burden of proof in a criminal case like *Boyle* would ensure that an association of individuals would rise to the level of an "enterprise." Third, and this is the most important point, *Boyle* did nothing to relieve a plaintiff of his obligation to plead—and to do so factually—that the alleged association members are more than "merely partners in a scheme too unsophisticated to be labeled 'organized crime,' which RICO was designed to combat." *In re McCann*, 2008 WL 638139, at *6.

Plaintiff also resorts to linguistic gamesmanship to avoid dismissal. He accurately quotes this sentence from a key case, *Reves v. Ernst & Young*: "One must 'participate in the operation or management of the enterprise itself' to be subject to § 1962 liability." He then says, "Notice the critical 'or.'" (Response Memorandum, p. 14.) But once we notice it, he moves it—three-

4

card monte like—earlier in the sentence to reach the conclusion that all one must do is "participate" in an enterprise for liability to attach. *Id*. That's not true: *Reves* and its progeny leave no doubt that it's the "*operation*" or "*management*" of an enterprise that is prohibited under 1962(c). *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993)  Here, once again, Plaintiff has alleged no facts demonstrating that AIG or National Union did anything to *operate* or *manage* the alleged enterprise. *See Able Sec. and Petrol LLC v. State of Louisiana*, 569 F. Supp. 2d 617, 629 (E.D. La. 2008) (plaintiff must plead "how ***each*** defendant[] performed acts in furtherance of the enterprise . . ..") (emphasis added).  And in fact, Plaintiff actually states the opposite:  the FAC "alleges an arrangement among the Defendants in which each plays a role [and] in which none directs the others."  (Response Memorandum, p. 15.)  This is the antithesis not only of a RICO enterprise but of the operation or management of one as well.

E.  **Plaintiff Does Not Establish the Requisite Distinction between the Defendants (the Alleged RICO Persons) and the Alleged Enterprise.**

In the Fifth Circuit, a plaintiff may not allege an association-in-fact enterprise consisting solely of the defendants (which is exactly what Plaintiff does).  Plaintiff labels this proposition "specious," (Response Memorandum, p. 18), even though it is the law in this circuit.  Here's a recent example from this judicial district:

> … FMC's own allegations defeat the distinctiveness requirement under § 1962(c). FMC alleges in its Original Federal Complaint that ABB and Heerema are RICO persons, and that the JV, which is a joint venture between ABB and Heerema, is a RICO enterprise.  FMC then alleges that ABB and Heerema "have acted as RICO enterprises".  Because FMC's allegations demonstrate that there is no distinction between the RICO persons and the purported RICO enterprise(s), FMC has not stated a RICO viable claim under § 1962(c).

*FMC Int'l A.G. v. ABB Lummus Global, Inc*., No. H-04-3896, 2006 WL 213948, at *9 (S.D. Tex Jan. 25, 2009).  Because Plaintiff has not made *any* distinction between the defendants and the alleged association in fact, his RICO claims all fail.  And even the "alternative" (and improperly

5

vague) suggestion that there might be an association of fewer that all the defendants fails because the only exception to the non-identity rule is that a living person can be a defendant and part of an association-in-fact:

> There is a slim exception to the rule that the RICO person must be separate from the RICO enterprise. "Courts have routinely required a distinction when a corporation has been alleged as both a RICO defendant and a RICO enterprise, but a similar requirement has not been mandated when individuals have been named as defendants and as members of an association-in-fact enterprise." [citation omitted.] That rule does not apply here, as the . . . Plaintiffs' claim only implicates the corporate defendants.

*Bradley v. Phillips Petroleum Co*., 527 F. Supp. 2d 625, 652 n.52 (S.D. Tex. 2007) (dismissing RICO claims because, in part, plaintiffs had "not identified RICO persons separate from their alleged enterprise). Since Plaintiff has not pled facts supporting an exception to the non-identity rule, the RICO claim must be dismissed.

**F.     The McCarran-Ferguson Act and Filed-rate Doctrines Bar the Suit.**

The McCarran-Ferguson Act "reverse" or "inversely" preempts general federal legislation that impinges on state regulation of the "business of insurance." By statute, Texas defines a long list of activities that constitute the "business of insurance." TEXAS INS. CODE § 101.051(b). Plaintiff cannot dispute that National Union's underwriting and sale of his policy is—within the meaning of the Texas statute—the business of insurance. Nor can he dispute (1) that the coverage he purchased is heavily regulated by the Texas Department of Insurance ("TDI"), (2) that this regulation includes a process for filing and approving forms and coverage, or (3) that National Union indeed made the requisite regulatory filings. Despite his vague protestations to the contrary, Plaintiff's claims against National Union are a direct attack on acts that have already been approved by the TDI. Again, there is no allegation that National Union has failed to comply with or departed from the regulatory scheme. Thus, Plaintiff's assertion that his $100,000 death benefit for a nominal premium is a "joke," "useless" or "pitiful" is beside

the point because the TDI has already approved National Union's sale of that coverage. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, No. 3:07-cv-354, 2008 WL 4449482, at *5 (S.D. Ohio Sep. 30, 2008) (finding that "a RICO claim would frustrate the administrative regime of Ohio"; [t]hus, all pertinent case law directs this Court to dismiss Plaintiffs' RICO claims."). Plaintiff's RICO claims are therefore barred.

This same reasoning holds under the filed-rate doctrine, which prohibits collateral attacks on filed rates and forms. But because its application extends beyond federal claims, it reaches—and bars—***all*** of Plaintiff's claims.[3]

**G.     Plaintiff Does Not Plead Fraud with Particularity.**

A plaintiff alleging RICO or common-law fraud must do so with particularity, which entails specifying the statements contended to be fraudulent, identifying the speaker, stating where and when the statements were made, and explaining why they were fraudulent. *Bradley*, 527 F. Supp. 2d 648. And it will not do in a multi-defendant case to aver generally, as does Plaintiff here, that "the defendants, collectively, engaged in . . . fraud." *FMC Int'l A.G.*, 2006 WL 213948, at *6. Because Plaintiff does not allege that AIG or National Union ever said anything to Plaintiff or that Plaintiff relied on any allegedly false statement, all his fraud claims fail to achieve the requisite level of pleading detail.

**H.     AIG Is Not a Proper Party.**

There is not a single factual allegation in the FAC that AIG ever did anything to participate in the alleged scheme. This is not surprising because AIG is a holding company. Many courts have held that AIG is not a proper party in a dispute involving insurance

---

[3] In an attempt to salvage a claim, Plaintiff also raises an allegation that appears nowhere in the FAC—namely that a hypothetical, unpled disparity between National Union's filings and "what they were actually doing" would give rise to a claim. (Response Memorandum, p.33.) There is no factual basis for such a claim, but even if there were, the Fifth Circuit has squarely rejected that sort of "fraud-on-the-regulator" theory of RICO causation. *See Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 221-224 (5th Cir. 2003).

underwritten by one of its insurance-company affiliates. In the interest of brevity, AIG and National Union cited only one of those cases in its motion to dismiss, which Plaintiff attempts to distinguish on the grounds that this is not a breach-of-contract case. The aptness of that distinction remains elusive, but several courts have dismissed AIG—on holding-company grounds—from cases involving non-contract claims, including RICO claims. *See, e.g.*, *Peralta v. Figueroa*, No. 28093/06, 2007 WL 4104122, at *13-14 (N.Y. Sup. Nov. 14, 2007). *See also* Motion to Dismiss at p. 21.

Plaintiff does not plead any wrongful act committed by AIG. Absent any specific details, and because AIG is not involved in acts relating to underwriting or claims servicing, it cannot be a proper party and must be dismissed.

## Conclusion

Plaintiff has not and cannot turn this garden-variety—and meritless—consumer dispute into a nationwide RICO and fraudulent conspiracy case. His complaint should be dismissed.

Respectfully submitted,

GARDERE WYNNE SEWELL LLP

*/s/ Mark W. Bayer*
Mark W. Bayer (attorney-in-charge)
Fed. Bar No. 22645
State Bar No. 01939925
Randy D. Gordon
Fed. Bar No. 17973
State Bar No. 00797838
3000 Thanksgiving Tower
Dallas, Texas 75201
Phone: (214) 999-3000
Fax: (214) 999-4667
mbayer@gardere.com
rgordon@gardere.com

**ATTORNEYS FOR DEFENDANTS AMERICAN INTERNATIONAL GROUP, INC. and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing was served on all counsel of record either electronically pursuant to the court's ECF noticing system or by direct e-mail on this the 12th day of November, 2009.

| | |
|---|---|
| Kenneth R. Wynne<br>WYNNE & WYNNE, LLP<br>Pennzoil Place, South Tower<br>711 Louisiana, Suite 2010<br>Houston, TX 77002 | John F. Sullivan, III<br>WATT BECKWORTH THOMPSON<br> & HENNEMAN, L.L.P.<br>Pennzoil Place, South Tower<br>711 Louisiana, Suite 1800<br>Houston, TX 77002 |
| Eric Lipper<br>HIRSCH & WESTHEIMER, P.C.<br>Bank of America Center<br>700 Louisiana, Suite 2550<br>Houston, TX 77002 | Thomas E. Gilbertsen<br>KELLEY DRYE & WARREN, L.L.P.<br>Washington Harbour, Suite 400<br>3050 K Street, N.W.<br>Washington, DC 2007 |
| Ileana M. Blanco<br>DLA PIPER LLP<br>1000 Louisiana, Suite 2800<br>Houston, TX 77002 | Daniel A. Rozansky<br>Julia B. Strickland<br>STROOCK & STROOCK & LAVAN LLP<br>2029 Century Park East<br>Los Angeles, CA 90067 |
| Glen M. Boudreux<br>Maryellen Shea<br>JACKSON WALKER L.L.P.<br>1401 McKinney, Suite 1900<br>Houston, TX 77010 | George C. Lamb, III<br>BAKER BOTTS LLP<br>2001 Ross Avenue, Suite 600<br>Dallas, TX 75201 |

                                                           */s/ Mark W. Bayer*<br>
                                                           Mark W. Bayer